WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

*Attorneys for Ben Olson*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>SCOTT RHODES,<br><br>                    Defendant. | Case No. 1:23-mc-00304-BLW<br><br>**BEN OLSON'S OPPOSITION TO DEFENDANT'S MOTION TO AMEND HIS REPLY BRIEF** |

This Court should deny Defendant Scott Rhodes' motion to amend his reply brief for four reasons: (1) Federal Rule of Civil Procedure 15 does not apply to amending motions, only pleadings; (2) there is no reason Mr. Rhodes could not have raised this issue in his reply brief; (3) the items he claims were not produced in discovery by the Plaintiff in the underlying District of Montana case demonstrate that Mr. Rhodes' subpoena to Ben Olson is overbroad and seeks irrelevant information; and (4) Mr. Olson did provide the substantive information to the government. This Court should deny Mr. Rhodes' motion to amend, dkt. 4, as well as his motion to compel, dkt. 1.

## I.    BACKGROUND

*United States v. Rhodes*, No. CV 21-110-M-DLC-KLD, is an action brought by the U.S. Department of Justice in the District of Montana to enforce the FCC's monetary forfeiture order entered against Mr. Rhodes and to enjoin Mr. Rhodes from further violating the Truth in Caller ID Act, 47 U.S.C. § 227(e)(1). *See* Ben Olson's Opposition to Motion to Compel, Ex. 1. The Complaint in that case describes, *inter alia*, a series of spoofed robocalls that Mr. Rhodes made on five separate occasions, including spoofed robocalls made in the Sandpoint area in September of 2018 about Mr. Olson. *Id.* ¶¶ 24-26. The factual and procedural  background of that case is set out in more detail in Mr. Olson's Opposition to Mr. Rhodes Motion to Compel, Dkt. 2, and in the United States' Brief in Support of Its Motion for Partial Summary Judgment, *id.*, Ex. 2, and the United States' Statement of Undisputed Facts, *id.,* Ex. 3.

After an exchange of letters with Mr. Olson's counsel, *see id.*, at 5-6, Mr. Rhodes on November 27, 2023, filed this motion to compel Mr. Olson to produce 18 categories of documents in response to a third-party subpoena. Dkt. 1. Mr. Olson timely filed his opposition and supporting documents on December 18, 2023, and Mr. Rhodes filed his reply, with substantial additional exhibits, on December 29, 2023, dkt. 3, a few days ahead of his January 2, 2024, deadline for filing. On January 8, 2024, he filed a motion to amend his reply brief pursuant to Federal Rule of Civil Procedure 15(a)(1).

## II.    ARGUMENT

This Court should deny Mr. Rhodes' Motion to Amend for at least four reasons. First, Federal Rule of Civil Procedure 15 does not apply to amending motions, only pleadings. Rule 7 sets out the seven kinds of pleadings, none of which are reply briefs Fed. R. Civ. P. 7(a)(1)-(7). As District Local Rule 15.1 makes clear, Rule 15 applies only to those specific pleadings, and imposes

specific requirements for submitting the amended pleadings. The federal rules treat motions differently. Fed. R. Civ. P. 7(b). Thus, Rule 15 does not provide a basis for Mr. Rhodes to amend his reply brief.

Second, there is no reason Mr. Rhodes could not have raised the issues set out in his motion to amend in his reply brief. Mr. Olson asserted in his opposition that Mr. Rhodes had acknowledged in his motion to compel that the United States had produced to him voluminous discovery of materials that Mr. Olson provided to the government, including Mr. Olson's narrative description of his interaction with Mr. Rhodes. Dkt. 2 at 4, 14, citing Dkt. 1 at 2-3. Mr. Rhodes filed his reply 11 days later but did not contest that he had received all of these materials. Indeed, the exhibit to his motion to amend demonstrates that he made contact with the government to address this issue prior to the time he filed his reply brief.  Thus, he had an opportunity to make this argument in his reply brief but elected not to do so.

Third, the items Mr. Rhodes claims were not produced in discovery by the Plaintiff in the underlying District of Montana case demonstrate that Mr. Rhodes' subpoena to Ben Olson is overbroad and seeks irrelevant information. Mr. Rhodes claims in his motion to amend that two items in Mr. Olson's narrative timeline that he provided to government counsel in the underlying case were not produced by the government to him in discovery: (1) a "surveillance" video obtained by Mr. Olson from the Sandpoint Police Department; and (2) notes from a telephone call Mr. Olson received from a person who said he knew Mr. Rhodes from childhood when Mr. Rhodes went by a different last name. Dkt. 4, Ex. V; see also Dkt. 2, Ex. 14 at 3, 9. Neither of these records that Mr. Rhodes claims he did not receive is relevant.

Through a third-party subpoena, Mr. Rhodes can only obtain documents that are relevant to the underlying action. *See Briggs v. Cnty. of Maricopa*, No. CV-18-02684-PHX-EJM, 2021 WL

1192819, at *3 (D. Ariz. Mar. 30, 2021) (a "Court may quash a subpoena as overbroad if the documents requested are not relevant to the underlying action"); Moreover, in the third-party subpoena context, "courts have often demanded a stronger-than-usual showing of relevance." *BBK Tobacco & Foods LLP v. Skunk, Inc.*, No. CV-18-02332-PHX-JAT, 2020 WL 2395104, at *2 (D. Ariz. May 12, 2020). Under the Truth in Caller ID Act, 47 U.S.C. § 227 (e)(1), the government must prove that Mr. Rhodes (1) in connection with a voice or text service (2) caused a caller identification service to knowingly transmit misleading or inaccurate caller identification information (3) with the intent to defraud, cause harm, or wrongfully obtain anything of value. *See United States v. Rhodes*, No. CV 21-110-M-DLC-KLD, 2022 WL 2466796 (D. Mont. Apr. 1, 2022). The Complaint in the Montana case specifically alleges that the calls targeting Mr. Olson were made with the intent to cause harm to Mr. Olson in retaliation for Mr. Olson's reporting on Mr. Rhodes' actions in the Sandpoint community. Ex. 1 (Dkt. 1 at ¶¶ 25, 26); Ex. 2 (Dkt. 64 at 29). Neither Sandpoint Police Department records regarding Mr. Rhodes nor notes of a call Mr. Olson received from a person who asserted he knew Mr. Rhodes from childhood are relevant to whether robocalls Mr. Rhodes made targeting Mr. Olson were intended to cause harm to Mr. Olson. And notably, as in his motion to compel and reply, Mr. Rhodes makes no argument for why these records relevant. He simply asserts that because Mr. Olson described them in his narrative and provided that narrative to the government, Mr. Olson must now give them to him. That is not the standard for relevancy. Simply because the government obtains information in the course of an investigation does not make it relevant.

Finally, Mr. Olson did provide the information to the government referred to in his narrative. The video Mr. Olson obtained is body camera footage from one of the Sandpoint Police Department officers. Both in that body camera footage and the Sandpoint Police report

that Mr. Rhodes obtained described or referred to the surveillance video. While the sentence in

Mr. Olson's narrative may have been a bit clunky in describing those items, they were provided

to the government. Moreover, the Sandpoint Police Department records are public records

obtained by Mr. Olson through a public records request. If Mr. Rhodes truly believes he needs

those records to defend himself in the Montana action, he could submit a public records request

rather than serve an overbroad subpoena on Mr. Olson seeking irrelevant documents. Or he could

simply view the bodycam footage on the Sandpoint Reader Facebook page:

https://www.facebook.com/sandpointreader/videos/body-cam-video-of-scott-rhodes-person-of-
interest-obtained-via-public-records-re/2053788624639213/.

It is also undisputed that Mr. Olson, in his narrative (which Mr. Rhodes plainly has)

describes in detail his conversation with the individual who called him and stated that he had

known Mr. Rhodes since childhood and by a different name. Dkt. 2, Ex. E at 9. Thus, Mr. Rhodes

has that information, regardless of whether he received any underlying notes from the government.

### III.    CONCLUSION

For the reasons stated herein, Ben Olson respectfully requests that the Court deny

Mr. Rhodes' Motion to Amend his Reply.

DATED:  January 29, 2024.                    STOEL RIVES LLP

                                             /s/ Wendy J. Olson
                                             Wendy J. Olson

                                             *Attorneys for Ben Olson*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, I served a copy of the foregoing on the Registered

Participants as follows:

Michael J. Wadden                                    via email and U.S. mail
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 5th St., NW
Washington, DC  20530
Michael.j.wadden@usdoj.gov

Scott Rhodes                                         via email and U.S. mail
7167 1st St., #862
Bonners Ferry, ID  83805
olsonsubpoena@protonmail.com

/s/ Wendy J. Olson
Wendy J. Olson